Exhibit B

Plaintiff's Interrogatories (1-25) To Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REIN TECH, INC.,

    Plaintiff,

    v.

MUELLER SYSTEMS, LLC,

    Defendant.

No. 1:18-cv-01683-MN

## PLAINTIFF'S INTERROGATORIES (1-25) TO DEFENDANT

Under Rules 26 and 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of the United States District Court for the District of Delaware, Plaintiff Rein Tech, Inc. hereby requests that Defendant Mueller Systems, LLC, answer separately, fully, in writing, and under oath each interrogatory set forth below within thirty (30) days after the service of these Interrogatories upon Plaintiff's attorney of record, in accordance with the definitions and instructions below.

## DEFINITIONS

1.    "Mueller," "Defendant," "You," or "Your" means Mueller Systems, LLC, including past and present officers, directors, employees, agents, attorneys, consultants, predecessors, subsidiaries, parents, affiliates, and contractors.

2.    "Patents-in-Suit" means any patent asserted by Plaintiff in this action, including U.S. Patent Nos. 8,347,427 C1; 9,297,150 C1; 9,749,792 C1; and 11,549,837.

3.    "Accused Product(s)" means the products identified in Plaintiff's infringement contentions.

4.    "Prior Art" means anything that constitutes prior art under any subsection of 35 U.S.C. § 102 or § 103, including without limitation any publication, patent, use, sale, offer for

sale, prior invention, knowledge, or other activity.

5.    "This Action" means Case No. 1:18-cv-01683-MN in the United States District Court for the District of Delaware.

6.    The term "Document" incorporates the full meaning of Rule 34 of the Federal Rules of Civil Procedure, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive custody, possession, or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Rule 1001, Federal Rules of Evidence, as well as any electronic documents including electronic mail. Any document bearing marks, including initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, constitutes a separate document.

7.    The term "Thing" is used in the broadest sense to include everything contemplated by Rule 34(a)(1)(B) of the Federal Rules of Civil Procedure.

8.    "Person" or "Entity" include, without limitation, natural persons, partnerships, corporations, associations, and any other legal entities and units thereof.

9.    "Communication" means any transmission of information, including every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written, whether face-to-face or by telephone, mail, email, personal delivery or otherwise, and including letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews,

consultations, agreements and other understandings.

10.     "Relate," "Related to," "Relating to," or "Concerning" means constituting, pertaining to, mentioning, commenting on, connected with, discussing, describing, identifying, analyzing, explaining, showing, reflecting, dealing with, comprising, consisting of, containing, resulting from, supporting or regarding a particular subject in whole or in part, either directly or indirectly.

11.     "Date" means and refers to the exact day, month and year, if ascertainable, or if not, your best approximation thereof.

12.     The singular form of a word should be interpreted in the plural as well and vice versa. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case as most appropriate.

13.     The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive. The terms "any" and "all" should be given their most inclusive meaning.

14.     "LoRa" refers to the LoRaWAN® specification, which is a long range, low power, wide area networking protocol designed to connect battery operated "things" wirelessly to the internet in regional, national, or global networks, and targets key Internet of Things (IoT) requirements such as bi-directional communication, end-to-end security, mobility, and localization services.

15.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

16.     All other terms are to be interpreted in accordance with their normal usage in the English language.

## INSTRUCTIONS

1.      To the extent that you believe that an Interrogatory calls for information that is privileged or subject to other protection, in whole or in part, answer as much of each Interrogatory that, in your view, is not privileged.

2.      If, after answering, you become aware of different, supplemental or additional information relating to the subject matter of these Interrogatories, You are instructed to promptly file and serve supplemental answers.

3.      Whenever an interrogatory requests you to identify an individual or person, state, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment, and the present or last known title or occupation. Once a person has been identified in accordance with this subparagraph, only the name of that person needs to be listed in response to subsequent discovery requesting the identification of that person.

4.      Whenever an interrogatory requests you to identify a document, state, to the extent known, the type of document, the general subject matter, the date of the document, the Bates number (if applicable), and the author(s), addressee(s), and recipient(s).

5.      If you elect to avail itself of the procedure authorized by Federal Rule of Civil Procedure 33(d) for answering interrogatories, then for each Interrogatory so answered, you must specify the particular documents (by production number) or particular file name of any files located on the Source Code computer relating to the subject matter of that interrogatory, and the author and the date of preparation of each such document if such information is not apparent or is incorrectly or incompletely disclosed on the face of the document(s).

6.    Plaintiff is willing to meet and confer on any interrogatory that Defendant does not understand or needs clarification.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe the process of submitting a plan, obtaining approval, installing the accused products, money revenue received, and costs agreed upon for contracted projects with third parties using the accused products since 2018.

**INTERROGATORY NO. 2:**

Describe the number of LoRa and Cellular installations for contracted projects with third parties using the accused products since 2018.

**INTERROGATORY NO. 3:**

Describe the LoRa and Cellular infrastructure and maintenance costs for contracted projects with third parties using the accused products since 2018.

**INTERROGATORY NO. 4:**

Describe the MiNet and MiHub systems and their association with the accused products since 2018.

**INTERROGATORY NO. 5:**

Describe when and how a residential user, corporate user, or water municipality is provided an alert of a water leak and what options are available for each of the residential user, corporate user, and water municipality upon alert of a leak.

**INTERROGATORY NO. 6:**

Describe all data related to the accused products that is stored, transmitted, or harbored by Amazon Web Services or other cloud computing companies.

**INTERROGATORY NO. 7:**

Describe where and how the water use data for all currently contracted water meter projects using the accused products are stored and how the data is used by a Network Operations Center or home residents.

**INTERROGATORY NO. 8:**

Describe the Sentryx system and algorithm, what they are, and how they are used with the accused products.

**INTERROGATORY NO. 9:**

Describe the number and percentage of solid-state water meters (SSMs) that are currently installed the field under contract with third parties that use wireless technology.

**INTERROGATORY NO. 10:**

Describe the number and percentage of SSM water meters using a control valve currently installed in the field under contract with third parties.

**INTERROGATORY NO. 11:**

Describe the options for wired or wireless communications, wireless LoRa, and Cellular networks using Mi.Net® Fixed Network Collectors with the accused products and any corporate network infrastructure using Mi.Net® Fixed Network Collectors with the accused products.

**INTERROGATORY NO. 12:**

Describe your marketing of the accused products including the use of sales literature, such as brochures, flyers, bulletins, advertisements, pamphlets, catalog entries, product announcements, product descriptions, and other similar documents.

**INTERROGATORY NO. 13:**

Describe your examinations, evaluations, analyses, or studies of the technology and features of the accused products in comparison to the technology and features offered by your competitors.

**INTERROGATORY NO. 14:**

Describe your market assessments of the accused products, including market summaries, reviews, analyses, evaluations, studies, and comments including but not limited to market projections and market projection models, projected market penetration and market share studies, market surveys, focus group studies, customer satisfaction surveys, and competitive position analyses.

**INTERROGATORY NO. 15:**

Describe your strategic plans and business plans for the accused products for competing against your competitors, including any identification, review, analysis, evaluation, assessment, study, and summary regarding your competitors' technologies that compete with the accused products.

**INTERROGATORY NO. 16:**

Describe your actual, forecasted, planned, and budgeted gross and net sales, gross and net profits, gross and net profit margins, and gross and net revenues for the accused products and all products and services that have been marketed, offered, and sold in connection with the accused products in and from the U.S. since October 27, 2021.

**INTERROGATORY NO. 17:**

Describe how you price the accused products and the individual products, technologies, and services that you offer in connection with the accused products, including any strategic

analyses prepared in connection with setting the prices of the accused products and the perceived value of the individual products, technologies, and services offered in connection with the accused products.

**INTERROGATORY NO. 18:**

Describe all costs incurred for the accused products that are accounted for when pricing the accused products and forecasting profits, revenues, and sales of the accused products.

**INTERROGATORY NO. 19:**

Describe your historical market share, sales volume, pricing, revenues, costs, profits, profit margins, and cash flows relating to the accused products in the U.S. since October 27, 2021, including any studies and analyses used to determine your historical market share, sales volume, pricing, revenues, costs, profits, profit margins, and cash flows relating to the accused products in the U.S. since October 27, 2021.

**INTERROGATORY NO. 20:**

Describe the market demand and the factors that affect market demand for the accused products and the products and services that are marketed, offered, and sold with the accused products, including all reports and studies used to determine market demand and the factors that affect market demand for the accused products.

**INTERROGATORY NO. 21:**

Describe your available or potentially available non-infringing alternative technologies, including the costs and development time for the available or potentially available non-infringing alternative technologies.

**INTERROGATORY NO. 22:**

Describe the acceptability by the public for your available or potentially available non-infringing alternative technologies, including any evaluation, studies, testing, and analysis relied upon for determining the acceptability by the public for your available or potentially available non-infringing alternative technologies.

**INTERROGATORY NO. 23:**

Describe your policies and marketing programs for licensing patented technologies.

**INTERROGATORY NO. 24:**

Describe any negotiations and discussions between you and any non-affiliated business entity or individual concerning the licensing or possible licensing of patented technologies similar to the Patents-in-Suit, including any license, purchase, or settlement agreements executed or amended between you (as either licensor or licensee) and any other non-affiliated business entity or individual involving technologies similar to the Patents-in-Suit.

**INTERROGATORY NO. 25:**

Describe all known comparable license agreements to the claims of the Patents-in-Suit and explain or demonstrate how they are comparable to the claims of the Patents-in-Suit.

Dated: June 1, 2023

Timothy Devlin
Delaware Bar No. 4241
DEVLIN LAW FIRM LLC
1526 Gilpin Ave.
Wilmington, DE 19806
Phone: (302) 449-9010
tdevlin@devlinlawfirm.com

Respectfully Submitted,

*/s/ Peter J. Corcoran, III*
Peter J. Corcoran, III
Texas Bar No. 24080038
*Pro Hac Vice*
CORCORAN IP LAW PLLC
4142 McKnight Road
Texarkana, Texas 75503
Tel: (903) 701-2481
Email: peter@corcoranip.com

*Counsel for Plaintiff*
*REIN TECH, INC.*

-9-

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served by email on Defendant's counsel of record in this case on June 1, 2023.

*/s/ Peter J. Corcoran III*
Peter J. Corcoran III