# JACK SHRUM, P.A.

**CITIZENS BANK CENTER**
**919 N. MARKET STREET, SUITE 1410**
**WILMINGTON, DELAWARE 19801**

"J" JACKSON SHRUM*  
* ADMITTED IN DELAWARE, PENNSYLVANIA, AND NEW JERSEY  
E-mail: jshrum@jshrumlaw.com

TELEPHONE: (302) 543-7551  
TELECOPIER: (302) 543-6386  
Direct Dial: (609) 367-2430

July 29, 2025

**VIA CM/ECF**
The Honorable Judge Maryellen Noreika
J. Caleb Boggs Federal Building
844 N. King Street, Unit 19, Room 4324
Wilmington, DE 19801-3555

  RE: **Rein Tech v. Mueller Systems (No. 1:18-cv-01683-MN)**
     Attorney Eyes Only Materials

Dear Judge Maryellen Noreika,

  Please accept this letter in lieu of a more formal pleading in advance of the hearing scheduled for August 1, 2025. The Plaintiff respectfully presents this explanation and discussion of the possession and inclusion of AEO material in its expert reports.

**Inadvertent Receipt of Mueller's AEO Materials**

  Plaintiff's representative previously learned only of the single document marked AEO, Muller's Responses to Interrogatory Nos. 1-25, which was exhibited in Mr. Klicpera's Layman's Affidavit and Opening Expert Report. A paper copy of this document was believed to be inadvertently obtained in a meeting with Rein Tech's previous attorney. No AEO mark was noticed when converting the document to pdf and including as exhibited to show Defendant's failure to provide requested discovery.

  Recently, just after the July 10, 2025 oral hearing, Plaintiff and Mr. Klicpera learned that additional material considered AEO was exhibited in the Layman's Affidavit and Opening Expert Report. It was realized that the material that Mueller asserts are AEO documents were obtained

1

because Rein Tech's prior counsel provided these documents to a shared Dropbox account in preparation for trial. Mr. Klicpera did not recognize that these were AEO materials and does not have any other AEO documents. Rein Tech's prior counsel deleted the entire Dropbox account the day he was no longer representing Rein Tech. Rein Tech inadvertently included the AEO material as exhibits to demonstrate Defendant's infringement of certain elements. These exhibits were not made public. Also, these materials, unknown to be AEO at the time, were not discussed during Mr. Klicpera's deposition.

When Rein Tech prepared the expert witness reports, the final document was quickly completed and then the exhibits were quickly compiled and attached to show infringement. Rein Tech didn't even realize there were AEO materials until substitute Delaware Attorney Charlie Brown told Mr. Klicpera about the exhibits in the Expert Reports after the July 10, 2025 oral hearing.

**Characterization of Mueller's AEO Materials**

Exhibit 14 – Battery location (commonly known)
Exhibit 15 – Mesh Protocol (commonly known, general information)
Exhibit 16 – Sleep Mode (commonly known and practiced)
Exhibit 17 – Sleep Mode (commonly known and practiced)
Exhibit 18 – Meshing Layers (commonly known, general information)
Exhibit 19 – Encryption (not marked AEO)
Exhibit 20 – Programming Schedule (featured in '837 Patent).
Exhibit 22 – Stainless Steel Ultrasonic Meter (not marked AEO)

Most of the alleged protected materials (two-way mesh, sleep mode) have been in the public domain for years. Publicly available materials concerning mesh and sleep mode are more detailed and informative than Mueller antiquated protective materials (Exhibit A).

Further, Mueller openly published their own protected content regarding "a fixed network and true two-way mesh configuration" (Exhibit B).  The battery power, meshing materials and sleeping modes are common knowledge (Exhibit A).  Also, Defendant Mueller experienced sleep mode problems and undersized battery in its market sales (Exhibit C).

Mr. Klicpera conceived encryption for a water meter years earlier and it was claimed in the '427 Patent filed on August 24, 2011.

**Rein Tech's Technology is Independent and Predates the Lawsuit**

Before the lawsuit began, Rein Tech's lead professional engineer, Al Somerville, and his team favored and selected the Texas Instruments (TI) development trial boards and the MSP 430 microprocessor with sleep modes and meshing technology.  Rein Tech utilized the Semtech LoRa technology licensed to HopeRF for the Rein Tech water meter LoRa radio (RFM95W-915S2).

Prior to the beginning of this lawsuit and during the period of 2016-2019, Plaintiff conducted a residential field study using its water meter with flow rate sensor and LoRa wireless transceiver and a water control valve mechanism configured to communicate with a communication hub (Rein Tech Water Meter System).  Plaintiff devised and patented a superior sleep mode that utilizes a water flow event (assessed from the initiation of water flow with monitoring of water flow rate, water flow duration, and total water volume until the cessation of water flow) (Exhibit D).  Plaintiff used and tested meshing technology in its residential field study (Exhibit E), and this technology was detailed in the Texas Instruments literature (Exhibit A).  During this study period, Plaintiff developed a cell phone native Apple APP that provides the residents with water use information and reports detected leaks almost immediately (Exhibit F). Rein Tech can acquire water data and control its water control valve mechanism from anywhere

globally. Rein Tech identified water flow events, pressure events, and acoustic events for water patterns and signatures (all patented). The Rein Tech Water Meter System also includes a pressure sensor that monitors small leaks when the water valve control mechanism is closed to conduct a leak test (patented). Rein Tech developed an API to communicate with Amazon Web Service database with SQL statements to characterize water use devices (shower duration, toilet flushing). The software of the water meter and/or the communication hub uses software instructions, algorithms or artificial intelligence (AI) to further configure water patterns and signatures for water fixtures, water devices, or water appliances and to enable superior leak detection. Rein Tech's residential field study was very successful, and the Rein Tech Water Meter System performed as designed by the Rein Tech engineering team.

**Protective Order**

Rein Tech became aware of the Protection Order (Exhibit G and DI32) on April 11, 2025 when Defendant's attorney, Coby Nixon, sent a letter to Delaware attorney Jack Shrum regarding a Motion for Sanctions. Mr. Klicpera has since reviewed The Protection Order and found some issues that the Plaintiff believes are relevant.

1) Defendant is supposed to inform the Plaintiff of the violation and resolve the issue without involving the Court. Plaintiff was not provided with the opportunity to resolve this matter with the Defendant. The Defendant's attorneys, however, went straight to the Court and requested Sanctions.

2) Paragraph 19 of the Protection Order states: "Any outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that

4

he or she has received a copy of, has read, and has agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A."

Defendant cannot show compliance with this provision because it does not exist. Mr. Klicpera was not informed of the Protection Order and was never presented with a copy to read. And, the acknowledgement of the Protection Order was never presented to sign.

3) Paragraph 11 of the Protection Order states: "Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated RESTRICTED -- ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or Prosecution of any patent application pertaining to the Field of Invention of the Patents-in-Suit (*i.e.*, U.S. Patent Nos. 8,347,427; 9,297,150; and 9,749,792) during the pendency of this Action and for one year after its conclusion, including any appeals. For purposes of this paragraph, "Prosecution" includes without limitation original prosecution, reissue, reexamination, certificate of correction, *inter partes* review, covered business method review, or other procedure that may affect the scope of patent claims, but does not include an attorney or person that may assist in Prosecution but is not involved in the drafting of new claims or claim amendments. For purposes of this paragraph, "Field of the Invention of the Patents-in-Suit" includes the field

described in the "FIELD OF THE INVENTION" section of the Patents-in-Suit. To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the Field of Invention of the Patents-in-Suit."

The Protection Order identifies and states the Patents-in-Suit as the U.S. Patent Nos. 8,347,427; 9,297,150; and 9,749,792. However, the '427, '150 and '792 patents-in-suit were deleted from the Court docket. The 11,549,837 patent was not disclosed in the Protection Order. The Defendant never updated the Protection Order to include the '837 Patent.

I trust Your Honor will find the information in this letter useful in advance of the hearing scheduled for August 1, 2025.

Respectfully submitted,

/s/ Jack Shrum
"J" Jackson Shrum (DE Bar # 4757)

Cc:   Coby S. Nixon (*via* electronic mail)
      Cory M. Mull (*via* electronic mail)