IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REIN TECH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1683 (MN) |
| | ) |
| MUELLER SYSTEMS, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

"J" Jackson Shrum, JACK SHRUM, P.A., Wilmington, DE; Charles J. Brown, III, GELLERT SEITZ BUSENKELL & BROWN LLC, Wilmington, DE – Attorneys for Plaintiff

Kenneth L. Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Coby S. Nixon, Seth K. Trimble, Cory M. Mull, BUCHALTER APC, Atlanta, GA – Attorneys for Defendant

November 5, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are Defendant Mueller Systems, LLC's ("Mueller" or "Defendant") motions for summary judgment. (D.I. 173; D.I. 174; D.I. 175; D.I. 176). The motions have been fully briefed. (D.I. 178; D.I. 182; D.I. 189). For the following reasons, the Court will GRANT summary judgment of no infringement.[1]

## I. BACKGROUND

Plaintiff Rein Tech, Inc. ("Rein Tech" or "Plaintiff") alleges that certain of Defendant's products[2] infringe independent claim 42 and dependent claims 45[3] and 47-49, which depend on claim 42 ("the Asserted Claims") of U.S. Patent No. 11,549,837 ("the '837 Patent"). The '837 Patent is titled "Water Meter and Leak Detection System" and lists Michael Klicpera, the founder and president of Plaintiff, as the sole inventor. (D.I. 180, Ex. 3). Defendant asserts that each of the Asserted Claims is not infringed and invalid for a number of reasons.

### A. Procedural History

On October 26, 2018, Plaintiff commenced this action against Defendant, asserting claims for infringement of U.S. Patent Nos. 8,347,427; 9,297,150; and 9,749,792. (D.I. 1). On March 12, 2020, the Court granted Plaintiff's motion for a stay pending the United States Patent and Trademark Office's ("USPTO") *ex parte* reexamination of those patents. (D.I. 43; D.I. 67-

---

[1] At the November 5, 2025 Pretrial Conference, Plaintiff offered to dismiss the Complaint with prejudice. After a brief discussion, the Court stated that it would issue this opinion, granting summary judgment, and Defendant agreed that it would then dismiss its counterclaims without prejudice.

[2] The products at issue are the "Mueller 420RDM (Remote Disconnect Meter) with Cellular Node Meter Interface with MiNet®" and the "Mueller 420RDM (Remote Disconnect Meter) with Mi.Net® LoRaWAN (LW) Meter Interface Unit (Node)" (together, the "Accused Products"). (D.I. 178 at 7).

[3] The parties dispute whether claim 45 is properly asserted in this case. (D.I. 182 at 1, 12; D.I. 189 at 2 n.1).

1

68). The reexamination proceedings resulted in the cancellation of all original claims and the addition of amended claims. (D.I. 79). Accordingly, Plaintiff sought leave to amend its complaint in an unopposed motion, which this Court granted. (D.I. 80). On January 10, 2023, the USPTO issued the '837 Patent to Mr. Klicpera, who assigned the patent to Plaintiff. (D.I. 90). Thereafter, on March 10, 2023, Plaintiff filed its Second Amended Complaint – the operative pleading in this case – alleging that Defendant infringes several of its patents, including the '837 Patent. (D.I. 91). On March 24, 2023, Defendant answered and counterclaimed. (D.I. 93).

The case has since narrowed in scope. On May 22, 2024, this Court granted the parties' joint motion to dismiss all claims and counterclaims in this action except for those concerning the Asserted Claims in the '837 Patent. (D.I. 135).

Fact discovery concluded on November 13, 2023. (D.I. 147 ¶ 8(a)). The Court granted the parties' joint Proposed Claims Construction Order on November 26, 2024. (D.I. 150; D.I. 151). Expert discovery concluded on May 19, 2025. (D.I. 162).

On June 2, 2025, Defendant filed its opening brief in support of its motions for summary judgment. (D.I. 178). Plaintiff filed its opposition ("Opposition") on June 30, 2025. (D.I. 182). Defendant filed its reply on July 17, 2025. (D.I. 189).

  B.  **<u>Exclusion of the Certificate of Correction</u>**

On May 12, 2025, Plaintiff moved for leave to serve supplemental infringement contentions – nearly two years after the deadline for providing such contentions had passed – because it had received USPTO approval for a certificate of correction to the '837 Patent ("the Certificate of Correction"). (D.I. 147 ¶ 6(e); D.I. 167). The Certificate of Correction consisted of five pages, altered six sections of the specification, and changed multiple words in the Asserted

Claims.[4]  (D.I. 167, Ex. C; D.I. 168, Ex. P).  Defendant opposed the motion.  (D.I. 168).  On July 10, 2025, the Court held a hearing on the motion ("the COC Hearing").  (D.I. 193).

At the COC Hearing, the Court explained that Plaintiff was required to satisfy the "good cause" standard of Rule 16(b)(4), which applied because the motion asked the Court to amend its scheduling order after a deadline has passed.  (D.I. 193 at 33:2-9).  *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).  The Court further explained that good cause would depend in part on Plaintiff's diligence.  *See id.*

After hearing both parties, the Court found that Plaintiff had not acted diligently.  (D.I. 193 at 34:15-35:2).  Not only had Plaintiff failed to provide any indication that it was seeking a Certificate of Correction (let alone one making so many changes to the specification and claims), but, the Court explained, Plaintiff had inexplicably waited several months after receiving USPTO approval for the Certificate of Correction (in October 2024) before alerting the Defendant (in April 2025) or the Court (in May 2025).  (D.I. 193 at 33:10-20; *see also* D.I. 163; D.I. 168 at 1).  In this intervening period, the Court adopted the parties' agreed-upon claim constructions, and the parties exchanged opening, rebuttal, and reply expert reports – all addressing the original (non-corrected) claim language.  (D.I. 168 at 2; D.I. 193 at 33:21-34:20).  The Court further observed that the Certificate of Correction appeared to "change the case substantially, including by adding back in at least one claim that had been dropped and adding an additional accused product and requiring additional claim construction."  (D.I. 193 at 33:17-20).  Such significant changes, the Court noted, could require redoing fact and expert discovery, claim construction, and summary judgment briefing.  (*Id.* at 34:13-24).  In light of Plaintiff's lack of diligence and also the prejudice to the

---

[4]  Among other things, the Certificate of Correction changed claim 42's reference to "regional or controlled analysis" to "analysis."  (D.I. 167, Ex. C at 3; D.I. 168, Ex. P).

3

Defendant, the Court denied Plaintiff's motion and concluded that "the Certificate of Correction will not be a part of this case."[5] (*Id.* at 34:18–35:2).

### C. Sanctions Against Plaintiff

On May 12, 2025, Defendant moved for sanctions against Plaintiff for multiple violations of this Court's July 1, 2019 Protective Order. (D.I. 166). The Protective Order had been jointly proposed by the parties and approved by this Court without alteration. (D.I. 31; D.I. 32). As relevant here, the Protective Order provides that access to and disclosure of material exchanged in discovery designated "RESTRICTED – ATTORNEYS' EYES ONLY" ("AEO Material") is subject to certain restrictions, including:

- AEO Material cannot be disclosed to any individuals who fall outside the categories outlined in paragraphs 5(a-c) and (e-g) of the Protective Order, namely (a) outside counsel, (b) outside counsel's employees, (c) in-house counsel who "exercise no competitive decision-making authority on behalf of the client," (e) outside consultants or experts who "are not presently employed by the Parties hereto for purposes other than this Action" and have signed a nondisclosure agreement, (f) reasonably necessary litigation support services, and (g) the Court and its personnel. (D.I. 32 ¶¶ 5, 9).

- "Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's" AEO Material "who obtains, receives, has access to, or otherwise learns, in whole or in part," the other party's AEO Material "shall not prepare, prosecute, supervise, or assist in the preparation or Prosecution[6] of any patent application pertaining to the Field of Invention of the Patents-in-Suit." (*Id.* ¶ 11).

Defendant argued that Plaintiff violated this Protective Order by allowing Mr. Klicpera to access Defendant's AEO Material while occupying a competitive decision-making role at Rein Tech, and

---

[5] The Court does not address, here, the validity or infringement of the Asserted Claims as amended by the Certificate of Correction, or whether such amended claims could be brought in a separate proceeding.

[6] "'Prosecution' includes without limitation original prosecution, reissue, reexamination, certificate of correction, *inter partes* review, covered business method review, or other procedure that may affect the scope of patent claims." (D.I. 32 ¶ 11).

4

by prosecuting the Certificate of Correction for the '837 Patent after reviewing AEO Material. (D.I. 166 at 1). Plaintiff opposed Defendant's motion. (D.I. 169). On August 1, 2025, this Court held a hearing on the motion ("the Sanctions Hearing"). (D.I. 196).

After hearing arguments from both parties' attorneys and testimony from Mr. Klicpera, this Court held that Plaintiff violated paragraphs five, nine, and eleven of the Protective Order. (*Id.* at 43:3-44:3). Mr. Klicpera had access to a Dropbox of files, claim charts, and other documents containing Defendant's AEO Material for at least two years. (*Id.* at 44:4-11). The Court explained that Plaintiff could not take advantage of the exception in paragraph 5(c) of the Protective Order because it did not dispute that Mr. Klicpera, as Rein Tech's founder and president, exercised competitive decision-making authority on its behalf. (*Id.* at 43:12-19). Further, this Court determined that Mr. Klicpera pursued the Certificate of Correction in 2024 after accessing Defendant's AEO Material despite the Protective Order's ban on related patent "Prosecution," which was defined to include certificates of correction. (*Id.* at 43:24-44:3).

This Court concluded that sanctions were warranted due to the severity of Plaintiff's violations. Plaintiff's infractions were particularly egregious given Mr. Klicpera's "longstanding and continuous" access to AEO Material, the "multiple violations" of the Protective Order, Mr. Klicpera's apparent sharing of AEO Material with other non-eligible individuals (such as his wife and a contract attorney not of record), and the fact that "[n]o investigation was done in good faith, either by Plaintiff's counsel or Plaintiff" after learning of the violations. (*Id.* at 44:10-45:14). This Court thus, *inter alia*, enjoined further violations, ordered Mr. Klicpera to ensure that others who might improperly have AEO Material destroy such material, and disqualified Mr. Klicpera from testifying as an expert at trial. (*Id.* at 46:1-23). *See United States v. Brace*, 1 F.4th 137, 144 (3d Cir. 2021) ("District courts have broad discretion to impose proportional sanctions.").

### D. Recent Developments

After the Court's disqualification of Mr. Klicpera as an expert, Plaintiff did not seek leave for any other individual to testify as an expert in this case. Nevertheless, during a teleconference on October 8, 2025,[7] Plaintiff's counsel informed the Court, for the first time, that he planned to introduce two new experts at trial. (D.I. 204 at 13:8-14:15). Plaintiff's counsel had waited until October 7 – more than two months after the Sanctions Hearing, and just over a month before trial was set to begin – to inform Defendant's counsel that he planned to include these experts. (D.I. 147 ¶ 19; D.I. 204 at 8:25-9:15). Moreover, during the teleconference, Plaintiff's counsel admitted that he had not yet met these experts, had not begun the process of drafting expert reports, and had little idea about what these experts would testify. (D.I. 204 at 25:12-26:7). Even now, about a week before the November 12, 2025 trial date, Plaintiff has still not sought leave for these new experts to testify. Plaintiff thus lacks any expert who is eligible to testify at trial.

Against this backdrop, the Court now turns to Defendant's motions for summary judgment.

## II. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[7] At the teleconference, the use of the Certificate of Correction at trial was discussed. At the COC Hearing, this Court ruled that "the Certificate of Correction will not be a part of this case" and rejected Plaintiff's motion to supplement its infringement contentions to reflect the Certificate of Correction's alterations to claim language. (D.I. 193 at 34:25-35:2). A month later, at the Sanctions Hearing, the Certificate of Correction was briefly discussed because Defendant's motion for sanctions asked for it to be excluded from trial, and because there was discussion of whether the Protective Order barred Mr. Klicpera from seeking certificates of correction. (D.I. 196 at 16:25-17:22, 37:10-20, 44:2-3). There, the Court declined to "impose the sanction" of "at this point order[ing] that the certificate of correction be excluded from trial." (*Id.* at 47:3-14). Notably, this was not the Court overturning its prior discovery ruling. This ruling reflected that the Court did not at that point further exclude the Certificate of Correction as a sanction for the Protective Order violations.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the non-movant must come forward with specific facts to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

"Material" facts are those that "could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). "If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a

summary judgment." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (cleaned up).

### III.   DISCUSSION

Defendant moves for summary judgment of no infringement and invalidity on several grounds.

#### A.   Infringement

Defendant contends that summary judgment of no infringement is warranted because Plaintiff has not offered any evidence that the Accused Products contain the so-called "Setting Limitation" in claim 42. (D.I. 178 at 6-11). The Setting Limitation requires that "the CPU, microprocessor or microcontroller can at least include one of a programming setting managed by the user, remotely a mode setting, and a default or restricted setting processed by the manufacturing factory: . . . ." (D.I. 180, Ex. 3 (claim 42)). Defendant argues that Plaintiff's claim charts and expert report (submitted by Mr. Klicpera prior to his exclusion) do not address how the Setting Limitation is met in the Accused Products. (D.I. 178 at 7-10). Defendant further cites to its own expert's report, which concludes that a person of ordinary skill in the art ("POSA") would not understand the Accused Products to contain the Setting Limitation. (D.I. 178 at 10; D.I. 180, Ex. 11 ¶¶ 49, 75).

Plaintiff argues that the claim charts in its infringement contentions adequately establish the presence of the Setting Limitation in the Accused Products. (D.I. 182 at 12-14). Plaintiff also claims that two of Defendant's brochures and one of Defendant's YouTube videos display the Setting Limitation in the Accused Products. (*Id.* at 14-15).

As an initial matter, it is far from clear how the charts establish the presence of the Setting Limitation. For example, for the Mueller 420RDM (Remote Disconnect Meter) with Cellular Node Meter Interface with MiNet®, Plaintiff contends:

8

| the CPU, microprocessor or microcontroller can **at least include one of** a programming setting managed by the user, remotely a mode setting, and a default or restricted setting processed by the manufacturing factory to: | The Mueller 420 RDM Water Meter having a Cellular Node Interface with Mi.Net® LW has a **CPU, microprocessor or microcontroller can at least include one of a programming setting managed by the user, remotely a mode setting, and a default or restricted setting processed by the manufacturing factory to:** |
|---|---|

(D.I. 180, Ex. 5). For the Mueller 420RDM (Remote Disconnect Meter) with Mi.Net® LoRaWAN (LW) Meter Interface Unit (Node), Plaintiff similarly contends:

| the CPU, microprocessor or microcontroller can **at least include one of** a programming setting managed by the user, remotely a mode setting, and a default or restricted setting processed by the manufacturing factory to: | The Mueller 420 RDM Water Meter having a LoRa Interface with Mi.Net® has a **CPU, microprocessor or microcontroller can at least include one of a programming setting managed by the user, remotely a mode setting, and a default or restricted setting processed by the manufacturing factory to:** |
|---|---|

(D.I. 180, Ex. 6). Plaintiff's Opposition does not explain how these relatively barebones contentions from its claim charts establish the presence of the Setting Limitation in the Accused Products. (D.I. 182 at 12-14).

Similarly, although claim 42 contains lettered subparts ("a," "b," "c," and "d") that describe alternative purposes of the Setting Limitation, which Plaintiff appears to argue further prove the Accused Products contain the Setting Limitation (D.I. 182 at 13-14), Plaintiff again merely quotes portions of its claim charts,[8] without offering any explanation of how such portions establish the presence of the Setting Limitation in the Accused Products. (*Id.*) This point-and-quote approach

---

[8]  Further, though Plaintiff attached its claim charts to its Opposition, Plaintiff does not appear to have provided this Court with all of the relevant exhibits that are referenced in such claim charts. (D.I. 182-4, Ex. D; D.I. 182-5, Ex. E).

does not create a triable issue of material fact. The same is true with respect to the two brochures and YouTube video. Plaintiff attaches these sources to the Opposition but does not make a meaningful attempt to explain how such sources demonstrate that the Accused Products include the Setting Limitation. (*Id.*).

Plaintiff's conclusory infringement arguments are particularly problematic in that Plaintiff has no supporting expert opinion explaining how the Setting Limitation is met by the Accused Products. There is no dispute that this case involves complex technology.[9] Nor is there a dispute that expert evidence is generally necessary in cases that involve "complex technology." *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1347 (Fed. Cir. 2013); *see also Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) ("Suffice it to say that in a case involving complex technology, where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying only on testimony from those who are admittedly not expert in the field."); *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 n.7 (Fed. Cir. 2007) ("Even where literal infringement is involved, expert infringement testimony is generally required in cases involving complex technology.").

Here, however, we have no expert testimony to explain infringement to the jury. Plaintiff made the strategic decision to designate just one expert, Mr. Klicpera, who has now been excluded from testifying as an expert at trial for repeated violations of the Protective Order. (D.I. 196 at 46:1-25). Mr. Klicpera's opinions thus cannot be considered at this stage. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1235 n.9 (3d Cir. 1993) (to be

---

[9] Indeed, Plaintiff's counsel acknowledged during the October 8, 2025 teleconference that the patented technology was complex. (D.I. 204 at 6:21-23).

considered on summary judgment, evidence must be "capable of being admissible at trial").[10]  In the absence of a clear infringement argument and critical expert testimony, Plaintiff cannot meet its burden to establish infringement at trial, and summary judgment is appropriate.

### B. Validity

Having determined that summary judgment of noninfringement will be entered, the Court will refrain from addressing the invalidity grounds raised by Defendant.  *See, e.g., D & M Holdings Inc. v. Sonos, Inc.*, 309 F. Supp. 3d 207, 217 (D. Del. 2018) (declining to address invalidity arguments when disposing of the case on other grounds).  Defendant's motions asserting invalidity will thus be denied without prejudice to renew should the infringement claims be reinstated.

### IV. CONCLUSION

For the above reasons, the Court will GRANT Defendant's Motion for Summary Judgment of No Infringement (D.I. 175) and will DENY Defendant's Motion for Summary Judgment of Invalidity based on the Written Description Requirement (D.I. 173), Defendant's Motion for Summary Judgment of Invalidity based on Anticipation (D.I. 174) and Defendant's Motion for Summary Judgment of Invalidity based on Indefiniteness (D.I. 176) without prejudice.  An appropriate Order will be entered.

---

[10]  Even if Mr. Klicpera were permitted to testify, it is far from clear that would change the outcome.  Indeed, Plaintiff's Opposition does not reference any portions of his report or testimony that explains how the Settings Limitation is met in the Accused Products.  (*See* D.I. 182 at 12-16).  Mr. Klicpera's theoretical trial testimony also could not address any of Defendant's AEO Material because, as previously explained, reviewing such documents would violate the Protective Order in this case.  (*See supra* Section I.C; D.I. 32).