IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REIN TECH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1683 (MN) |
| | ) |
| MUELLER SYSTEMS, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

"J" Jackson Shrum, JACK SHRUM, P.A., Wilmington, DE – Attorney for Plaintiff

Kenneth L. Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Coby S. Nixon, Seth K. Trimble, Cory M. Mull, BUCHALTER APC, Atlanta, GA – Attorneys for Defendant.

February 12, 2026
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE**

Before the Court is Defendant Mueller Systems, LLC's Motion for Involuntary Dismissal with Prejudice due to Plaintiff's Continued Violation of the Protective Order and the Court's Sanctions Order, filed on October 30, 2025 ("the Sanctions Motion").  (D.I. 210).  For the following reasons, this Court will GRANT-IN-PART and DENY-IN-PART the motion.

I.      **BACKGROUND**

This is an action for patent infringement brought by Plaintiff Rein Tech, Inc. against Defendant Mueller Systems, LLC.  The history of this case is more fully summarized in the Memorandum Opinion issued on November 5, 2025, wherein this Court granted summary judgment in favor of Defendant on all of Plaintiff's claims.  (D.I. 223).  All that remains for this Court to decide is the Sanctions Motion.

A.      **The Protective Order**

The Sanctions Motion arises from the Protective Order in this case, which was jointly proposed by the parties and entered by this Court without modification.  (D.I. 31; D.I. 32).  The Protective Order facilitates the exchange of confidential discovery between the parties by, among other things, allowing parties to designate materials they produce as "RESTRICTED -- ATTORNEYS' EYES ONLY" ("AEO Material"), which then subjects the AEO Material to certain restrictions.  (D.I. 32).  The relevant restrictions include:

- "Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's" AEO Material "who obtains, receives, has access to, or otherwise learns, in whole or in part," the other party's AEO Material "shall not prepare, prosecute, supervise, or assist in the preparation or Prosecution[1] of any patent application pertaining to

---

[1] The Protective Order provides that "'Prosecution' includes without limitation original prosecution, reissue, reexamination, certificate of correction, *inter partes* review, covered business method review, or other procedure that may affect the scope of patent claims, but does not include an attorney or person that may assist in Prosecution but is not involved in

the Field of Invention of [U.S. Patent Nos. 8,347,427, 9,297,150, and 9,749,792 ('the Protective Order Patents')]." (*Id.* ¶ 11).

- "[E]ach Party shall create an 'Ethical Wall' between those persons with access to HIGHLY SENSITIVE MATERIAL," which includes AEO Material, "and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the Field of Invention of the [Protective Order Patents]." (*Id.*).

In short, the Protective Order prohibits individuals who have received or had access to AEO Material from prosecuting patents in the same "Field of Invention"[2] as the Protective Order Patents. (*Id.* ¶¶ 5, 9, 11). By the time sanctions became an issue in this case, the only allegedly infringed patent was U.S. Patent No. 11,549,837 ("the '837 Patent"),[3] which falls within the same Field of Invention as both the Protective Order Patents and U.S. Patent Appl. No. 17/981,454 ("the '454 Application"), which is the subject of the Sanctions Motion.[4]

B. **Prior Violations of the Protective Order**

This is not the first time sanctions have been raised in this action. On August 1, 2025, this Court held a hearing to evaluate allegations that Michael Klicpera – the founder and president of Rein Tech and the named inventor on the '837 patent – had violated the Protective Order.

---

the drafting of new claims or claim amendments." (D.I. 32 ¶ 11). As used herein, "Prosecution" has the same meaning assigned to it in the Protective Order.

[2] The Protective Order provides that "'Field of the Invention of the [Protective Order Patents]' includes the field described in the 'FIELD OF THE INVENTION' section of the [Protective Order Patents]." (D.I. 32 ¶ 11). As used herein, "Field of Invention" has the same meaning assigned to it in the Protective Order.

[3] Plaintiff made several amendments to its complaint that changed the patents at issue in this case. (D.I. 1; D.I. 81; D.I. 91). The parties stipulated to dismissal of all claims except those concerning the '837 Patent on May 21, 2024. (D.I. 133).

[4] Plaintiff does not contest that all of the patents or patent applications at issue here, including the '454 Application, are directed to water meter systems and are within the same Field of Invention. (D.I. 169; D.I. 221).

2

(D.I. 196). After hearing from counsel for both sides and testimony from Mr. Klicpera, this Court found that Mr. Klicpera had unauthorized access to Defendant's AEO Material since at least around July 2023. (*Id.* at 44:4-10). Additionally, Mr. Klicpera had referenced and cited Defendant's AEO Material in various documents Plaintiff submitted, including claim charts and an expert report, and had also attached AEO Material as exhibits to those documents. (*Id.* at 11:5-13:16, 14:23-15:2, 28:7-29:9, 31:4-25, 32:20-34:22, 43:1-44:10; *see also* D.I. 166 at 2).

This activity violated paragraphs five and nine of the Protective Order. Paragraph five permits only certain categories of individuals[5] to access AEO Material, and Mr. Klicpera did not fall into any of those categories. (D.I. 32 ¶¶ 5, 9; D.I. 196 at 43:7-19). For instance, Mr. Klicpera could not claim to be an "outside consultant[] or expert[]" permitted to receive AEO Material because he was affiliated with a party before the litigation (i.e., not "outside") and had not signed the required undertaking. (D.I. 32 ¶ 5(e); D.I. 196 at 43:20-24). Nor could Mr. Klicpera take advantage of paragraph nine's carveout that permits "in-house counsel who exercise no competitive decision-making authority" to access AEO Material because Mr. Klicpera did not dispute[6] that he was a competitive decision-maker, and in any event he is the owner, founder, and president of Plaintiff. (D.I. 32 ¶ 9; D.I. 166, Ex. B; D.I. 169; D.I. 196 at 2:4-5, 43:12-18).

---

[5] AEO Material can only be disclosed to (a) the parties' outside counsel, (b) outside counsel's employees, (c) in-house counsel who "exercise no competitive decision-making authority on behalf of the client," (e) outside consultants or experts who "are not presently employed by the Parties hereto for purposes other than this Action" and have signed a nondisclosure agreement, (f) reasonably necessary litigation support services, and (g) the Court and its personnel. (D.I. 32 ¶¶ 5, 9).

[6] More than five months after this Court made the finding that Mr. Klicpera exercises competitive decision-making authority, Mr. Klicpera claimed – for the first time – that he does not exercise that authority. (D.I. 196 at 43:12-19; D.I. 233). His argument is confined to a single paragraph in his "Certification to Judge Maryellen Noreika's Court for the January 15, 2026 Hearing," which was filed the day before that hearing. (D.I. 233 ¶ 18). Therein, he stated that he has "not performed the role of a competitive decision-marker

3

This Court also determined that Mr. Klicpera – a registered patent attorney who filed and prosecuted the '837 patent and the patents previously asserted in this litigation – had violated paragraph eleven of the Protective Order, which bars individuals who have viewed AEO Material from prosecuting patents in the same Field of Invention as the Protective Order Patents. (D.I. 196 at 43:24-44:3; *see also* D.I. 166 at 1). Mr. Klicpera violated this paragraph by pursuing a certificate of correction to the '837 Patent after having access to Defendant's AEO Material. (*Id.*).

At the same hearing, this Court found that others in Mr. Klicpera's orbit had violated the Protective Order. (D.I. 196 at 28:7-29:6, 44:14-20). Mr. Klicpera testified that his wife, Ann Butler, and a research attorney, neither of whom were authorized to view AEO Material, had helped him draft infringement contentions that attached and referenced AEO Material. (*Id.*). When asked about edits to those documents, Mr. Klicpera denied making them, but stated that either Ms. Butler or the research attorney had added the citations to AEO Material – including citations to specific page numbers of AEO Material. (*Id.* at 28:7-29:16, 38:17-39:4). Additionally, though Ms. Butler and the research attorney deny reviewing AEO Material, both acknowledge that

---

for" Plaintiff because Plaintiff has never "marketed or sold a water meter" and because Plaintiff's "research and development . . . was conducted without charging any participants for costs and services." (*Id.*).

This is not persuasive for several reasons. First, Mr. Klicpera did not raise this issue in a timely fashion before the hearing on August 1, 2025. Second, this issue is not directly relevant to the misconduct alleged in the Sanctions Motion at hand because the Protective Order allows non-competitive-decisionmakers to review AEO Materials but still bars such individuals from prosecuting related patents. (D.I. 32 ¶¶ 5, 9, 11; D.I. 210). Third, Mr. Klicpera is not merely "in-house counsel" for Plaintiff; he is Plaintiff's founder, owner, and president, and he is intimately involved with both amassing Plaintiff's patent portfolio and pursuing this litigation on behalf of Plaintiff. (*Id.* ¶ 9; D.I. 166, Ex. B; D.I. 196 at 2:4-5). Further, where a plaintiff company is a nonpracticing entity, in-house lawyers with involvement in both the business and litigation are competitive decisionmakers. *See Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, No. CV 15-53-RGA, 2016 WL 2904592, at *4-5 (D. Del. May 18, 2016).

4

they "assisted in reviewing part of Michael Klicpera's expert witness reports," which contain references to attached AEO Material. (D.I. 166 Exs. D, J, N, O; D.I. 198).

For all these violations, the Court issued several sanctions, including prohibiting Mr. Klicpera from testifying as an expert in the case and allowing Defendant to recover attorneys' fees in connection with seeking sanctions. (D.I. 196 at 46:21-23; D.I. 235). The Court also enjoined further violations of the Protective Order and ordered Mr. Klicpera to ensure that he, Ms. Butler, and the research attorney deleted all AEO Material in their possession. (D.I. 196 at 45:15-46:17).

### C. Currently Asserted Violations of the Protective Order

Unfortunately, that was not the end of this story. On October 30, 2025, Defendant filed the Sanctions Motion, contending that – less than three months after this Court sanctioned Plaintiff – Mr. Klicpera *again* engaged in prohibited patent prosecution by filing a response to a final office action for the '454 Application. (D.I. 210). Specifically, on October 27, 2025, a 45-page response ("the PTO Response") to the U.S. Patent and Trademark Office ("the USPTO") regarding the '454 Application was filed using Mr. Klicpera's credentials. (D.I. 210, Ex. A). Mr. Klicpera signed the PTO Response and listed himself as the "Attorney for Applicant." (*Id.*). The PTO Response consists of, among other things, six pages of substantive amendments to the specification and twenty-one pages of substantive amendments to pending claims. (*Id.*). Certain amendments appear to address non-infringement arguments raised by Defendant in this case. (*See, e.g.*, *id.* at 29 (amending claim related to base station connected to flow rate sensors); D.I. 180, Ex. 11 ¶ 67 (contending that the sensor is not electrically connected to the electronic board)). The Court now addresses the motion.

## II.  LEGAL STANDARD

"A district court has great discretion when deciding how to enforce violations of its own orders." *Eagle Comtronics, Inc. v. Arrow Commc'n Lab'ys, Inc.*, 305 F.3d 1303, 1314 (Fed. Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Nov. 1, 2002). "District courts have broad discretion to impose proportional sanctions." *United States v. Brace*, 1 F.4th 137, 144 (3d Cir. 2021).

## III.  DISCUSSION

### A.  Violations of the Protective Order and this Court's Injunction

There is no serious dispute that the PTO Response constitutes a violation of paragraph eleven of the Protective Order. Mr. Klicpera's counsel acknowledged as much during a hearing before this Court on January 15, 2026. (D.I. 236 at 17:11-18:25). Further, Plaintiff does not contest that the PTO Response constitutes "Prosecution" under the Protective Order or that the '454 Application falls within the same "Field of Invention" as the Protective Order Patents. (D.I. 221). Nor does Plaintiff challenge that the PTO Response was submitted by Mr. Klicpera after he had (improper) access to AEO information. (*Id.*).

Plaintiff instead first attempts to minimize Mr. Klicpera's misconduct. (*Id.* at 2-4). To this end, Plaintiff has represented that:

- Upon reviewing the Sanctions Motion, "Mr. Klicpera emailed his attorney and pointed out that another party worked on the '454 patent application [request for continued examination] and response. Mr. Klicpera did not prosecute this amendment with a request for continued examination." (*Id.* at 2);

- "Defendant's attorney's assertion that Mr. Klicpera prosecuted the '454 patent application RCE and response is false. Another party performed this work activity independently and provided the final work product that was submitted on the deadline due date of October 27, 2025. It was necessary to meet this deadline to avoid abandonment of the '454 patent application." (*Id.* at 2-3);

- "Mr. Klicpera underwent total knee replacement surgery two months prior, in August 2025, and is in the acute phase of a long-term recovery, which is typical

6

after this type of procedure. He cannot sit at the computer for long durations of screen time. In addition, he is busy with other important work, including preparing for this trial." (*Id.* at 3); and

- "Mr. Klicpera has complied with the patent prosecution bar." (*Id.*).

In addition, Mr. Klicpera's wife, Ms. Butler, filed a "Certification to Judge Maryellen Noreika's Court for the January 15, 2026 Hearing" stating[7] that Mr. Klicpera had little involvement in the PTO Response beyond affixing his electronic signature and facilitating its submission to the USPTO, stating:

- "Michael Klicpera had knee surgery in August 2025 and could not work at the computer. I know that he did not work on the '454 Response to Office Action." (D.I. 234 ¶ 18); and

- "On October 27, 2025, I emailed my '454 file to Michael Klicpera at approximately 8:00 pm PT and then assisted Michael Klicpera at his computer to verify the submission was complete and electronically filed with USPTO at approximately 8:30 pm." (*Id.* ¶ 19).

These statements are unavailing. The act of signing and submitting a document to a federal agency carries legal weight, and Mr. Klicpera – who signed the PTO Response in his capacity as a lawyer – cannot lawfully feign ignorance of the contents of his submission. *See* 37 CFR § 11.18(b) (signing or filing any paper for presentation to the USPTO is a certification that "all statements made therein on information and belief are believed to be true" and that the signatory is aware of the criminal penalties for fraudulent statements). By signing the Response, Mr. Klicpera rendered himself responsible for its contents, which included pages of amendments to claims. Moreover, even if Mr. Klicpera's role was as stated, any participation in Prosecution is still a violation of the terms of the Protective Order. *See* D.I. 32 ¶ 11 (providing that those who

---

[7] Although the "Certification" is notarized (to confirm Ms. Butler's identity), it contains no statement that the assertions set forth are true and accurate or made under the penalty of perjury. (D.I. 234). Mr. Klicpera's "Certification to Judge Maryellen Noreika's Court for the January 15, 2026 Hearing" is similarly lacking. (D.I. 233).

have viewed AEO material must be walled-off from those who prosecute or "assist" or "supervise" patent prosecution).

Next, Plaintiff attacks Defendant's counsel for raising the issue, charging that "it should be known to all attorneys in this case that Mr. Klicpera is the only individual who viewed (briefly and inadvertently) the Mueller-designated AEO materials." (D.I. 221 at 3). That assertion lacks credibility. To start, it was neither "brief[]" nor "inadvertent[]" for Mr. Klicpera to cite to attached AEO Material throughout the claim charts and expert reports he submitted. Further, during the August 1 hearing, Mr. Klicpera provided testimony to the contrary about the access of others to AEO material, including in the following colloquy with the Court:

> THE COURT: . . . People added citations to confidential documents and pages of confidential documents. Who did that?
>
> MR. KLICPERA: I had many people working on that document.
>
> THE COURT: Who?
>
> MR. KLICPERA: My wife.
>
> THE COURT: All these people. Your wife made the edits to the documents? She added references?
>
> MR. KLICPERA: She made edits. I had a lawyer working on it.
>
> THE COURT: Are any of these people under the protective order?
>
> MR. KLICPERA: No.
>
> THE COURT: Let's get the universe of who might have made edits, adding, for example, citations to Mueller documents 1 and 2 which were marked as attorneys' eyes on the -- someone added to the original document a citation to those page numbers. What is the universe of people who that could have been?

>MR. KLICPERA: Those three people.
>
>THE COURT: Your wife?
>
>MR. KLICPERA: And Maria Paradi.
>
>THE COURT: Who's not under the protective order.
>
>MR. KLICPERA: No.
>
>THE COURT: And who else? You?
>
>MR. KLICPERA: And me.
>
>THE COURT: Do you know if you made those edits?
>
>MR. KLICPERA: I did not make those edits.
>
>THE COURT: Whoever made those edits citing to confidential information, where would they have had gotten that information? Where would they have gotten the document to look at?
>
>MR. KLICPERA: I don't know.

(D.I. 196 at 28:7-29:16). Mr. Klicpera also acknowledged that his wife and the research attorney reviewed the claim charts that referenced and attached AEO Material. (*Id.* at 38:17-39:4). And, as noted previously, Ms. Butler and the research attorney both acknowledged that they "assisted in reviewing part of Michael Klicpera's expert reports," though both dispute that they were involved in "selecting" exhibits. (D.I. 198). Thus, as this Court has previously found, Ms. Butler and the research attorney viewed AEO Material.[8]

---

[8] Indeed, this set of facts suggests that Ms. Butler also violated paragraph eleven of the Protective Order. Plaintiff maintains that Ms. Butler performed most of the work on the PTO Response. (D.I. 234 ¶¶ 16-19; *see also* D.I. 221 at 2-3). And though Ms. Butler claims she did not review AEO Material, this is belied by her husband's (aforementioned) express testimony to the contrary. (D.I. 196 at 28:7-29:23, 38:17-39:4; D.I. 234 ¶ 4). Perhaps Ms. Butler did not understand that she has accessed confidential information, but she did nonetheless and thereafter engaged in prohibited patent prosecution.

Finally, Plaintiff argues that Defendant improperly designated its AEO Material as such – as if that excuses his multiple violations of the Protective Order. (D.I. 221 at 5-6; *see also* D.I. 169 at 2-3; D.I. 233 ¶ 16). Nowhere does the Protective Order endow Plaintiff with the unilateral authority to determine that Defendant's documents are insufficiently confidential and use them as he pleases. (D.I. 32). To the contrary, paragraph eighteen of the Protective Order provides a process for just such a complaint: it permits either party to request that a confidential designation be "modified or withdrawn," and if the receiving party does not agree to the redesignation within ten days, the requesting party "may apply to the Court for relief." (*Id.* ¶ 18). Plaintiff does not claim to have followed this procedure and, to this day, has not filed an application Court challenging Defendant's designations.

### B.    Appropriate Sanctions

The repeated nature of this misconduct warrants serious sanctions, particularly because violations of the Protective Order continued after this Court held a hearing on similar violations, ordered such behavior to cease, and issued other (lesser) sanctions. Clearly those sanctions were insufficient. Further, protective orders provide litigants with critical assurance that their sensitive information will not be used or disclosed improperly, and "if the Court were not to sanction – and sanction severely – the repeated violation of provisions meant to protect the most sensitive of information, protective orders would be rendered worthless." *TRUSTID, Inc. v. Next Caller Inc.*, No. CV 18-172 (MN), 2021 WL 11960341, at *2 (D. Del. July 12, 2021). Here, there is the additional concern that future litigation or patent prosecution involving Mr. Klicpera, Ms. Butler, or the research attorney will be tainted by the information these individuals improperly gleaned from Defendant's confidential documents.

First, this Court will permanently preclude Mr. Klicpera, Ms. Butler, and any other individuals who had access to Defendant's AEO Material (including the research attorney

referenced herein) from participating in any way (directly or indirectly) in the Prosecution (as defined by the Protective Order in this case) of any existing patents or currently-pending patent applications in the same Field of Invention as the '837 Patent and any continuations, continuations-in-part or divisionals of those patents or applications. To clarify, this restriction is permanent; the one-year expiration date in the Protective Order does not apply. This restriction, however, applies only to the patent families of currently existing patents and pending patent applications in the Field of Invention. Provisional or original patent applications (not claiming priority to an existing patent or pending application) in the Field of Invention that are filed after the date of this opinion may be prosecuted after the one-year time period in the Protective Order expires.

Second, this Court will permanently bar Plaintiff (including any successors or assignees of Plaintiff, and any entities controlled in whole or part by Mr. Klicpera[9]) from asserting existing patents or patents resulting from currently-pending patent applications in the same Field of Invention as the '837 Patent and any continuation, continuation-in-part or divisional of those patents or applications in any litigation against Defendant. This includes the Certificate of Correction to the '837 Patent that was at issue in this case. It would be unjust to subject Defendant to another round of this litigation. Plaintiff has repeatedly exposed Defendant's confidential information to multiple unauthorized individuals, who have – after viewing such confidential information – engaged in unauthorized patent prosecution, including modifying the scope of claims in a possible attempt to circumvent Defendant's noninfringement arguments. (D.I. 166

---

[9] This broad sweep is necessary because Mr. Klicpera appears to have prosecuted the '454 Application through a third-party corporation, Patent Technology, Inc. (D.I. 210 Ex. B). This Court's intention is to prohibit Mr. Klicpera and any associated individuals or entities from asserting any patents that may be tainted by the violation of the Protective Order against Defendant.

Ex. I; D.I. 196 at 28:7-29:16; D.I. 210 Ex. A). Appeal of this Memorandum Opinion and accompanying Order is, of course, exempt from this sanction.

Third, this Court will report the activity engaged in by Mr. Klicpera to the USPTO to allow it to decide whether his actions in prosecuting the '454 Application are consistent with USPTO practices.

This Court will reject Defendant's requests for dismissal of the action and attorneys' fees. The former is rendered moot by this Court's order granting summary judgment in favor of Defendant. The latter is not warranted in these circumstances because the Defendant has already received significant benefit from previous sanctions issued on August 1, 2025 and January 27, 2026, as well as from the sanctions issued herein. (D.I. 196; D.I. 235).

## IV. CONCLUSION

For the reasons set forth above, Defendant's Sanctions Motion (D.I. 210) will be granted-in-part and denied-in-part. An appropriate order shall be entered.